IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ACCURATE COMMUNICATIONS, LLC, a Nebraska limited liability company, | ) ) ) ) | 4:05CV3286 |
| Plaintiff, | ) | **MEMORANDUM** |
| vs. | ) ) | **AND ORDER** |
| STARTEL CORPORATION, a California corporation, | ) ) ) ) | |
| Defendant. | ) | |

The plaintiff, Accurate Communications, LLC ("Accurate") alleges that it agreed to purchase from the defendant, Startel Corporation ("Startel"), "a telephone operating system, including software, hardware, installation, and software licenses for the total sum of $269,500 plus tax"; that it paid $160,000.00 to Startel; that the system provided "is dysfunctional"; and that Startel "has failed to adequately respond to [Accurate's] complaints . . . and has not provided adequate training." (Amended Complaint, ¶¶ 4, 7-9 (filing 1-3, at 10-11).) Five causes of action are set out in Accurate's amended complaint: (1) breach of contract; (2) negligence; (3) fraudulent misrepresentation; (4) negligent misrepresentation; and (5) assumpsit.

Startel has moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Startel argues: (1) that the breach of contract claim is actually a breach of warranty claim, and, as such, is barred by disclaimers in the contract; (2) that the tort claims for negligence, fraudulent misrepresentation, and negligent misrepresentation are barred by the "economic loss" rule; (3) that Accurate cannot sue for breach of contract and assumpsit in the same action; and (4) that the misrepresentation claims are not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). Accurate disputes each of these contentions.

## DISCUSSION

A Rule 12(b)(6) motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief. <u>Gilmore v. County of Douglas</u>, 406 F.3d 935, 937 (8th Cir. 2005). A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. <u>Id.</u>

### *I.  Breach of Contract*

Contract documents attached to the amended complaint include a purchase agreement for the system and a license agreement for the software. The purchase agreement contains a limited warranty, which provides in part:

> 3.1  Seller warrants each Unit of Hardware when delivered to Customer (A) has been manufactured to and will comply substantially with Seller's then current official published specifications, (B) is in good working order, and (C) is free from defects in workmanship and material. For a period of one year following Installation as defined in paragraph 8.1, the Seller will, as its sole obligation, furnish parts reported by Customer as having been, in its opinion, defective and are so found by Seller. Such parts will be furnished on an exchange basis with Customer paying all labor and transportation costs in connection therewith. "Defective" shall not be construed to include parts requiring replacement as a result of normal wear and tear, catastrophe, fault or negligence of the user, improper use of the Hardware, or other causes external to the Hardware. For a period of ninety (90) days following installation Seller will furnish labor related to such defective parts.
>
> \* \* \*

> 3.3 THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, WRITTEN OR ORAL, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE REMEDY HEREIN PROVIDED SHALL BE THE EXCLUSIVE REMEDY OF CUSTOMER.  Customer assumes full responsibility for the overall effectiveness of the operating environment in which the Hardware is to function and the cooperation and capabilities of its personal.

(Amended Complaint, Exhibit A (filing 1-3, at 15-16); Filing 10-2, at 3.)

The license agreement similarly provides:

> 9. LIMITED WARRANTY
>
> StarTel warrants that each Software Product when delivered to Customer, will comply substantially with StarTel's then current official published specifications.
> THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, WRITTEN OR ORAL, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
> Customer assumes full responsibility for the use of and for determining the supervision, management and control of its use of Software Products, including but not limited to, assuring proper machine configuration, program installation, audit controls. operating methods, implementing sufficient procedures and checkpoints to satisfy its requirements for security and accuracy for input and output as well as restart and recovery in the event of malfunction.

(Amended Complaint, Exhibit A (filing 1-3, at 10); Filing 10-2, at 4.)

Accurate alleges that Startel breached the agreement because it "has failed to provide the communications system as required by the agreement and has not provided . . . adequate training." (Amended complaint, ¶ 13.) Startel contends that Accurate in effect is claiming that Startel breached implied warranties. While this may be true, it may also be that Accurate is claiming that Startel breached express warranties, including certain representations that allegedly were made during contract negotiations concerning the functionality of the system and the adequacy of training. Thus, it is alleged elsewhere in the amended complaint that

> Defendant represented to Plaintiff Accurate that the Startel System was capable of, among other things:
>
> A. Operating properly and adequately handling Plaintiff's call volume;
> B. Generating customized reports for Plaintiff's clients;
> C. Customizing reports for Plaintiff's clients by organizing call data and forwarding such reports to Plaintiff's clients electronically;
> D. Automatically forwarding incoming calls for Plaintiff's answering service without having to manually direct the calls;
> E. Forwarding orders in a format suitable to Plaintiff's client[s] directly to Plaintiff's clients without manipulation;
> F. Generating call time reports that were more accurate than Plaintiff's current system because of the integrated nature of the Startel System;
> G. Merging data from current telephone system database into the Startel System to avoid hundreds of hours of data entry (ISDN Intelligent transfer);
> H. Having a useable, customizable directory that could be utilized in several ways, including, e-mail, alpha paging, etc.;
> I. Accurately calculating tax for orders taken for Plaintiff's clients;
> K. [sic] Being upgraded for ON-CALL scheduler.
>
> In addition, Defendant represented that Plaintiff would receive adequate training including the proper training materials, and that the service and technical representatives would be available immediately 24

>hours a day, 7 days a week that were knowledgeable about the System and could assist Plaintiff.

(Amended Complaint, ¶ 3.) In either case, the disclaimers contained in the purchase agreement and the license agreement should apply to bar any relief beyond that provided by the limited warranties. The purchase agreement and license agreement also contain merger clauses which state that any prior representations are superseded by those agreements. (Amended Complaint, Exhibit A (filing 1-3, at 16; filing 1-4, at 8, 10); Filing 10-2, at 3, 4.)

It could also be that Accurate is relying upon the limited warranty provisions in the purchase agreement and license agreement. Depending upon the evidence, Startel's alleged failure to respond to Accurate's complaints might even defeat the limited warranty provisions (e.g., if the limited remedy of replacement of defective parts failed of its essential purpose). Perhaps Accurate is instead claiming that Startel violated provisions of the agreements pertaining to delivery and installation of the system; in this regard, it is not clear from the amended complaint whether Accurate even accepted the system so as to trigger the limited warranties. In summary, I must reject Startel's argument that the first cause of action fails as a matter of law because of the limited warranty provisions.

## *II. Negligence*

For its second cause of action, Accurate alleges that Startel "had the duty to provide Plaintiff a functioning communications system, provide Plaintiff adequate training, and provide adequate staff with complete knowledge of all programming requirements of the system and the ability to respond in a timely manner," and that Startel "breached that duty by providing Plaintiff with a dysfunctional communications system and inadequate training." (Amended Complaint, ¶¶ 16, 17.) Even though Accurate has labeled this cause of action as involving a "negligence" theory of recovery, it appears to be merely a restatement of the first cause of action for

"breach of contract." There is no allegation that Startel was negligent in performing its alleged contractual duties.[1] Because the second cause of action is duplicative of the first cause of action, it will be dismissed.

### III. *Fraudulent Misrepresentation*

Accurate next alleges that Startel "made representations regarding the capabilities of the system, training, and support for the Startel System" that "were known to be false or made recklessly without knowledge of their truth and as positive assertions," that "[t]he representations were made with the intention that Plaintiff would rely on them," that "Plaintiff did rely on the representations and agreed to purchase the Startel System," and "[a]s a result, Plaintiff incurred damages of at least $160,000.00." (Amended Complaint, ¶¶ 20-24.) These allegations include all of the required elements of a fraudulent misrepresentation claim under Nebraska law. See Outlook Windows Partnership v. York Intern. Corp., 112 F. Supp. 2d 877, 894 (D.Neb. 2000) (citing Cao v. Nguyen, 607 N.W.2d 528, 532 (2000)).

Startel argues that the "economic loss" rule prevents Accurate from suing in tort, except possibly to claim that there was fraud in the inducement of the contract. As the Eighth Circuit has observed, however, "Nebraska does not restrict contracting

---

[1] Accurate contends that Nebraska law permits it to sue Startel for negligent performance of the contract, and it cites two professional malpractice cases as authority for this proposition, Getzchman v. Miller Chemical Co., Inc., 443 N.W.2d 260 (Neb. 1989), and Lincoln Grain, Inc. v. Coopers & Lybrand, 345 N.W.2d 300 (Neb. 1984). Startel, on the other hand, contends that Nebraska law prohibits Accurate from suing in tort rather than under a warranty or contract theory to recover only for alleged economic loss. In support of its position, Startel cites two product liability cases, National Crane v. Ohio Steel Tube Co., 332 N.W.2d 39 (Neb. 1983), and Hawkins Constr. Co. v. Matthews Co., 209 N.W.2d 643 (Neb. 1973). Because Accurate has not alleged any negligence on the part of Startel, I need not resolve this particular legal issue.

parties or their associates to breach of contract actions." Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938, 944 (8th Cir. 2001) (citing Streeks, Inc. v. Diamond Hill Farms, Inc., 605 N.W.2d 110 (Neb. 2000); Gibb v. Citicorp Mortgage, Inc., 518 N.W.2d 910 (Neb. 1994)). The Nebraska Supreme Court has "held that a purchaser is not limited to the contract when bringing claims against a seller, but may also bring claims for fraudulent concealment, fraudulent misrepresentation, and negligence," Streeks, 605 N.W.2d at 122 (citing Gibb). "A misrepresentation and a warranty are not mutually exclusive and may arise from the same representation on which the cause of action is based." Edwin Bender & Sons v. Ericson Livestock, 228 Neb. 157, 162, 421 N.W.2d 766, 770 (1988). In particular, the Nebraska Supreme Court has held that "Nebraska's U.C.C. does not preclude an action for fraud." Streeks, 605 N.W.2d at 123 (citing Neb. U.C.C. § 1-103).

Although I reject Startel's principal argument, I agree that the third cause of action, as alleged, does not satisfy Rule 9(b)'s enhanced pleading requirements. The allegedly false representations presumably are those representations which are listed in paragraph 3 of the amended complaint, but Accurate has not alleged who made each representation, or when, where, and how each representation was made. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir. 1997) ("circumstances constituting fraud" that must be pleaded with particularity "means the who, what, when, where and how: the first paragraph of any newspaper story.") (quoting DiLeo v. Ernst, 901 F.2d 624, 627 (7th Cir. 1990)).

Although a pleading alleging fraud need not provide anything more than notice of the claim, it must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Schaller Telephone Co. v. Golden Sky Systems, Inc., 298 F.3d 736, 746 (8th Cir. 2002) (quoting Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001)). Thus, a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the

identity of the person making the misrepresentation and what was obtained or given up thereby." Id. "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Id. (quoting Commercial Property v. Quality Inns, 61 F.3d 639, 644 (8th Cir.1995).

Accurate suggests in its brief that it "should be afforded an opportunity to amend its misrepresentation claims either now or at the conclusion of discovery." (Filing 16, at 10.) I will not grant leave to amend in response to this suggestion, but will require Accurate to file a motion for leave to amend and proposed second amended complaint in accordance with NECivR 15.1(a). See Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913-14 (8th Cir. 2002) (district court did not abuse its discretion in denying leave to amend based on a request contained in a response brief).

### IV. *Negligent Misrepresentation*

Accurate also alleges that Startel "failed to exercise reasonable care or competence in supplying correct information to Plaintiff." (Amended Complaint, ¶ 29.) This allegation of negligence is generally in accord with the definition of negligent misrepresentation found in Restatement (Second) of Torts § 552 (1997), which the Nebraska Supreme Court officially adopted in Gibb. See Outlook Windows, 112 F. Supp. 2d at 895-96.

Startel argues that negligent misrepresentation must also be pleaded with particularity.[2] I agree. Rule 9(b) only applies to "averments of fraud and mistake," but the Nebraska Supreme Court has held that "because negligent misrepresentation requires an intent to induce reliance, it is more appropriately viewed as a subspecies

---

[2] For reasons previously stated, I disagree with Startel's additional argument that the "economic loss" rule precludes this cause of action.

of fraud [rather than negligence]." Farr v. Designer Phosphate and Premix Int'l, Inc., 570 N.W.2d 320, 326 (Neb. 1997) (negligent misrepresentation not an "occurrence" under liability insurance policy). Thus, the fourth cause of action will be dismissed for noncompliance with Rule 9(b). See Abrahamson v. First Nat. Bank of Holdrege, Nos. 4:05CV3039 through 4:05CV3044, 2006 WL 277109, *8 (D.Neb. Feb. 3, 2006) ("Plaintiffs cannot avoid the need to plead fraud with particularity by recharacterizing their fraud claim as negligence."). Again, I will not grant Accurate's informal request for leave to amend as it pertains to this cause of action.

### *V. Assumpsit*

Finally, Accurate alleges that "[i]n fairness and justice" Startel should be required to repay the money it received. (Amended Complaint, ¶ 36.) Under Nebraska law, "[a]n action in assumpsit for money had and received may be brought where a party has received money which in equity and good conscience should be repaid to another." Kissinger v. Genetic Evaluation Center, Inc., 618 N.W.2d 429, 435 (Neb. 2000). "In such a circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment." Id., at 435-36. "Although founded on equitable principles, the action falls under the common-law class of assumpsit and is an action at law." Id., at 436.

"In order to maintain an action in assumpsit for money had and received, the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." Id. "Moreover, it is generally held that when there are contract terms controlling and there is no duress, an action for money had and received for money paid on a contract cannot be maintained without rescission of the contract." Wrede v. Exchange Bank of Gibbon, 531 N.W.2d 523, 530 (Neb. 1995) (citations omitted). Stated differently, "there cannot be an express and an implied contract for the same thing existing at the same time." Id.

Startel argues that Accurate cannot bring an action in assumpsit while also claiming there was a breach of contract, but Federal Rule of Civil Procedure 8(e)(2) permits a party to "set forth two or more statements of a claim or defense alternatively . . . [and] also [to] state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Thus, even though Nebraska law requires an election of remedies, see Genetti v. Caterpillar, Inc., 621 N.W.2d 529, 545-46 (Neb. 2001), the procedural aspect of the election-of-remedies doctrine "has been eviscerated by the permissive rules of pleading under Fed.R.Civ.P. 8(a) and 8(e)(2)." Kansas State Bank in Holton v. Citizens Bank of Windsor, 737 F.2d 1490, 1499 (8th Cir.1984)).

## CONCLUSION

Accurate has pleaded actionable, albeit inconsistent, claims for breach of contract and assumpsit. Accurate has failed to allege any actionable negligence on the part of Startel, and its two causes of action alleging misrepresentation are not pleaded with particularity as required by Fed. R. Civ. P. 9(b). Therefore,

IT IS ORDERED that:
1. Defendant's motion to dismiss (filing 8) is granted in part and denied in part, as follows:
    a. Plaintiff's second, third, and fourth causes of action are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).
    b. In all other respects, Defendant's motion is denied.
2. Plaintiff's informal request for leave to amend the third and fourth causes of action is denied without prejudice.

February 28, 2006.　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/ *Richard G. Kopf*
　　　　　　　　　　　　　　　　　　United States District Judge